Next case is Deborah Blackwell v. United States, 2024-2190. Mr. Follings, good morning. Good morning. May it please the Court, Michael Follings on behalf of the appellant Deborah Blackwell. This Court should overturn the summary judgment decision in the Court of Federal Claims because there was a genuine dispute of material fact as to the issues presented to the Court, whether Deborah Blackwell's duties that she performed via overtime were substantially similar to her male comparator, and whether the government proved its affirmative defense of whether the pay disparity was justified. The Court weighed multiple factors in determining whether or not Ms. Blackwell's job duties were substantially similar to her male comparator, and they went to the Equal Pay Act standard of skill, effort, responsibility, and working conditions. Well, the comparator's job was quite different. I disagree, Your Honor. I think the Court focused more on the position descriptions rather than the actual work performed as Mr. Luchowski— He had more of a desk job, and he was partly outside. I disagree with that. So as her male comparator, Mr. Luchowski, said in his declaration, the majority of his overtime work was performed via overtime being deployed to field offices to assist with the emergency response. As he states in his declaration, however, he was managing those. He was doing logistical work. He was not actually in the field doing that. His work was certainly important, but he was managing, making sure people were in the right place. While that was happening, Ms. Blackwell was performing Mr. Luchowski's duties within the Houston field office, but she was managing the programs he managed. She was performing the logistical duties that he did under the same supervisor, but performing his duties. But she was not being paid for the work while he was. And that is something I think the Court disregarded. In terms of the working conditions, the Court specifies that Mr. Luchowski performed work outdoors, which that doesn't appear in Mr. Luchowski's declaration. I don't even believe that that appears in his position description. That is not supported by the record. In fact, he says he was managing hotel rooms, ensuring meals were provided to the people he was managing. And that's the majority of the overtime work he testifies to. There is overtime work where I think even the government agrees that they were actually performing together at a conference in 2019. For purposes of today and for purposes of summary judgment, I think you've agreed that the position description that was identified by the government can be the one that we proceed with. Am I right? For purposes of today, yes. I know the government spent some time in its brief saying that we were relying upon the wrong position description. I think there was some question as far as the time frame of that position description, but the court relied upon that position description to make its ruling. However, I think what I'm also saying is that Mrs. Blackwell's position description and Mr. Luchowski's position description aren't the, you can't look at those position descriptions alone. I understand. I understand your point on that. I mean, one thing I don't hear you saying is that there's genuine issues in material fact as to what each of these people, what Ms. Blackwell and the comparator were doing. You know, that, you know, you're not disputing the facts underlying their job positions. You're disputing the factual conclusions made. Is that right? Yes. However, I do want to point out Mrs. Blackwell's position description as in the record is, I would consider it vague. She is an expert in immigration. I don't believe the word immigration appears in her position description. As Ms. Blackwell testified in her deposition, her position description was met as far as a vague program manager position, but she does manage programs that include some of the programs that Mr. Luchowski managed. As far as the other factors that the court analyzed, the skill, effort, and responsibility, as far as the effort, as the court's law has stated, that goes to mental and physical effort. The court agrees that Mr. Luchowski and Mrs. Blackwell had the same mental effort. The court disagrees that they had the same physical effort. As I was saying earlier, the court essentially says that Mr. Luchowski had more physical effort because he was out in the field when he was deployed to several field offices. As I stated earlier, I believe that's an incorrect analysis as he actually, when he was outside of the Houston field office, we don't disagree with that, but he wasn't in the field doing physical work. Again, I'm not trying to minimize the work he did. My question is, what does the law say about when you're looking at someone's position, are you looking at what they do or what they might be required to do in the event of an  The law says you look at the performance of the job duties. For this case, you're really comparing the overtime work between the individuals. You can't just look at the position description, especially when you're speaking, in this case, about the overtime work. I think really you have to look at what Mr. Luchowski states he did in his declaration. You also have to look at Mrs. Blackwell's deposition, Mrs. Blackwell's declaration as well, to determine what overtime was done. And I think at summary judgment, I think that was an incorrect finding to find, based on those facts, that dispute of fact about what they did versus what Mr. Luchowski did. What about after a prima facie case is presented, then the court went on to address whether that was fairly rebutted or not, by determining that the government adequately explained, raised an affirmative defense that would explain that any pay deferential was not on the basis of sex. Instead, they said it was on the basis of statute. That is, that her job fell under Title V, whereas his job fell under a different provision that included an award of overtime. Yes, I don't think it's disputed that the government can't just rely upon her position being a non-COPRA regulation than what Mr. Luchowski does. I think the argument that the court was going to what the government has said is that Mrs. Blackwell didn't prove she did overtime, nor was she ordered or approved for overtime. However, in the depositions of her managers, they state that she was contacted after hours, that they weren't exactly aware of how often she was contacted. Am I wrong? That's not the basis for the ruling in this case, was that her overtime was not ordered or approved, right? I mean, you're familiar with the Lesko case, I would think. Well, it is, Your Honor. The court in its decision specifically says that, and supports what the government argued, that Mrs. Blackwell was not ordered or approved for overtime. That's what the court says. And we disagree with that. We disagree that she was not ordered or approved. We actually say she was ordered and approved for overtime. And in fact, in her grievance that she submitted prior to filing this lawsuit, she makes that argument. And when she discovered the issues as far as discovering her mail computer was getting paid a sum of at least $45,000, she raised this issue and she said, I've been working, you know, I've actually copied you on correspondence. You know other individuals within our agency contact me after hours, and, you know, I should be approved for that overtime. And her supervisors alleged that they didn't know she was working overtime, which I think that's improper finding to make at summary judgment. The court also determined- What was the evidence that she presented on the orders and approvals? So at the- I understand it goes back multiple years. Did she have emails for every single week of the three years? Or how did that work? So when she presented her grievance, her supervisors asked her for the evidence, which I think probably caught her off guard because she thought they knew that she was working overtime. Nevertheless, she did attempt to obtain the email evidence and the phone records. She had trouble. She states that she really wasn't able to obtain those records from the agency's office, not until during this litigation when we- after we filed a motion to compel to obtain those records. And we've submitted an affidavit with those emails stating what the overtime she did was worked. The court found that wasn't sufficient evidence, though, that by her own affidavit you can't find that she did the work. But I would submit that the overtime work is proven by her mail compared to by his own affidavit and through testimony. We don't really, in this case, have individuals testifying that certain people did work in this case. We have people saying, well, this is the overtime we did, and Mrs. Blackwell is saying this is the overtime I did. So I would submit to the court that the court's ruling was incorrect even on that issue as well, that Mrs. Blackwell was able to rebut the government's affirmative defense that she performed overtime work and she was approved for overtime work. As far as the case law, I just wanted to address that. I don't believe either side submitted a case law that necessarily changes the factual analysis here, but I do want to address two cases. The Martin v. U.S. case that we submitted in our brief, the Martin v. U.S. case. Although it was not decided in summary judgment, the court still found that the employees were substantially similar because they manage similar programs. I also want to address the case that the government produced in its brief, the Santiago case. In the Santiago case, the government proffered that this case supports that Mr. Luchowski did additional duties that makes it different. But in the Santiago case, one employee was a non-supervisor employee and the other comparator was a supervisor employee. The court found that the additional supervisory duties makes those jobs different. The court also noted in that case the plaintiff was actually compensated. So I think that case makes it different than Mrs. Blackwell's case. If the court doesn't have any other questions, I'll yield the rest of my time for rebuttal. We'll save it for you. Ms. Salani. Good morning, your honors. May it please the court. We heard a lot of counsel statements this morning that he disagrees with the court's conclusions. However, the standard is not whether counsel disagrees, but whether there is a genuine dispute of a material fact. And Ms. Blackwell has failed to establish that there is. I will begin by addressing the incorrect position description because for the first time in her reply brief, Ms. Blackwell raised the issue that this position description upon which we relied is incorrect because it contained a 2019 date in there. It's my understanding that they're not contesting that anymore. If that's the case, then a good more reason to affirm the trial court's decision, your honor, because throughout her briefing, Ms. Blackwell relied on an incorrect position description. But the arguments that the government... Is it true that we're supposed to look at more than just the position description? Absolutely, your honor. The arguments that the government made before the trial court regarding the duties of Ms. Blackwell and Mr. Luskowski was primarily based on her description of her own duties in her deposition and in her statements made pursuant to the desk audit, as well as Mr. Luskowski's own declaration. We heard counsel state that Mr. Luskowski's declaration does not support the contention that pretty much all of the overtime that he performed was while he was deployed and outside of his office. I think the declaration itself proves that that is not the case. Additionally, both of his supervisors, Mr. Murdoch and both of his supervisors testified that a majority of his overtime occurred while he was deployed. In fact, one of the supervisors testified that Mr. Luskowski, even though it's likely that... Even though they knew that he monitored emails outside of his normal tour of duty, and he probably fielded some calls, that he had never requested overtime for that type of work. He was never approved, and he never received overtime for that type of work. So Ms. Blackwell's arguments in her briefing today that the overtime that he performed was in his office doing similar type of work that she performed, which again, she claims her overtime work was answering phone calls and responding to emails. That's just plainly contradicted by the record. That his overtime work may have been while he was deployed, but it was also in an office, not outside? I'm not quite sure I understood what the argument was, but do you have a response to that? Well, Your Honor, if we look at the totality of the work that he performed, and as the trial court acknowledged in many of those... Let me be more specific. Could you give us some detail on the type of work that he was doing while he was deployed and working overtime? Sure. He was, for instance, he responded to emergency situations like hurricane responses, and he sometimes worked from morning to night, 18-hour shifts. That's corroborated by his supervisor's testimony, his declaration, states deploying to the southern border, for example, when there was a surge in migrants. So I think he might have performed some work. And was he required to wear a uniform and carry a firearm? Absolutely, Your Honor, yes. And carry a firearm, the full protective gear, and uniform. The trial court correctly went through all of the four factors necessary to determine whether the jobs are substantially equal. And I think, you know, with regard to skill, effort, responsibilities, and the working conditions, there certainly are differences between the type of overtime work performed. And again, we are looking at... The issue is whether the agency failed to compensate Ms. Blackwell for overtime work when it compensated a male comparator for performing substantially equal overtime work. And the record conclusively shows that she never deployed from her office. She claimed to have performed an average of 10 hours of work per week from 2018 and forward. And that type of work included responding to emails and phone calls. Now she alleges that her supervisors acknowledged that she performed this type of work. What she points to in the deposition testimony is some acknowledgment by her supervisors that in the time frame of 2010 to 2014, there were instances where she and Mr. Laskowski were rotating to, you know, field issues that came up after hours. However, that stopped in 2014 when the agency created a new position and hired a watch coordinator, what they called it. So following 2014, that stopped. And the time frame that we're concerned with here is September 2018 and forward. So that's irrelevant. She also mentioned Hurricane Harvey, I believe, which also is in 2017, again, outside of the relevant time period. And then the last thing that she mentioned that she performed that was similar to Mr. Laskowski was the DFO conference in 2019. With regard to that, her supervisors acknowledged that she may have worked overtime, but they said that she never put in a request for it. They don't know when she arrived and when she left and how many hours she may have potentially worked. And, you know, pursuant to the regulations, she has to be officially ordered and approved, and she also has to, pursuant to agency policies, make a request for overtime and explain how many hours she worked. And she didn't do that. But she did receive a cash award for working that day, and that's supported by the deposition testimony as well. With regard to the government's affirmative defense, Your Honor, there's no dispute that she's not under the same statutory or regulatory scheme that Mr. Laskowski was. The agency gave her multiple opportunities to present evidence that she was actually ordered and she officially ordered to perform any overtime. Or, in fact, they said even, you know, just provide us any type of documents, any type of documentation or whatever evidence to substantiate that she worked the hours that she claimed to have worked, and she failed to do that. She failed to do that throughout her grievance, and as of the date of the deposition testimony, so the supervisor's, which was in 2022, she still hadn't done that. And even before the court, she failed to do that. So not only did she fail to substantiate the hours that she worked, she also failed to substantiate that she was officially ordered and approved. Whereas Mr. Laskowski, there's absolutely no dispute that he followed all of the requirements under the statutory scheme COBRA that he was under. He was, both supervisors acknowledged that each time he performed the overtime work, he was specifically assigned by his supervisors to do so. He followed up with contemporary and his requests for overtime, and then he was paid the following pay period as was required by the law and the agency's policies. So even if the court disagrees, which it should not, that the trial court erred in holding that Mrs. Blackwell failed to establish her prima facie EPA claim, the court nevertheless should affirm on the basis that the agency proved its affirmative defense. Unless the court has any other questions. Thank you, Counsel. Thank you, Your Honor. Mr. Follings has some rebuttals on. Thank you. I do want to address the affidavit by Mr. Laskowski as far as what he did, and I guess hopefully clarify what our argument was. In his affidavit on page appendix 363 of 364, he states when he was deployed to San Diego, he was coordinating the launching for all personnel in multiple locations, operational supplies and transportation to and from hotels and duty locations. He also states that he later in his declaration supported meetings, coordination of meeting space, catering, and movement of executives from airports to hotels. There are other paragraphs in this declaration, but as I stated earlier, it does not state that he was in the field outside or outdoors, as the court stated in the lower court. Our argument is that Ms. Blackwell, while he was deployed each and every time he stays here, she was performing similar duties in the Houston field office as far as what I'm phrasing, how she phrasing her deposition logistical work. She was managing his programs, including the Joint Terrorism Task Force in the field office, yet she was not being paid overtime. She was working overtime performing those duties. I do also want to address some of the other factors as far as the skill. What the court seems to put importance on was that Ms. Blackwell didn't graduate from the Federal Law Enforcement Training Center. She testifies in her deposition she did. As far as being issued a firearm or wearing a uniform, we don't disagree that Ms. Blackwell didn't wear a uniform like Mr. Luchowski, but she did have a uniform. She was authorized to carry a weapon. As far as the responsibility factor, as we've argued in our briefs, we believe that Ms. Blackwell was managing programs similar to Mr. Luchowski, especially when he was performing his overtime. I've already discussed the working conditions as far as how they were in similar working conditions, and I believe the court got that wrong as well. We also submit that as far as the grievance was concerned, as far as producing information to support her overtime, I think a fact that the court didn't hear was that after Ms. Blackwell submitted her grievance and after it was decided upon, her managers then told other individuals to not contact her. I believe Mr. Showbrooks testifies in his deposition he did that to make sure there wasn't overtime happening. I don't even think there really was a disagreement that she wasn't performing overtime. They just didn't see the evidence they thought they needed to, although Ms. Blackwell has produced those emails during the litigation before the summary judgment decision and submitted a declaration regarding her expertise about how many hours she spent via overtime based on her review of those emails. If the court does have any other questions, then I will request that the court overrule the summary judgment decision by the lower court. Thank you, counsel. Thank you to both counsel. The case is submitted.